# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# EASTERN DIVISION

| | |
|---|---|
| DRAESHUND K. MAGEE, | ) |
| Plaintiff, | ) |
| v. | ) Case No. 1:20-cv-00294-MHH-HNJ |
| UNITED STATES OF AMERICA, | ) |
| Defendant. | ) |

## MEMORANDUM OPINION

Plaintiff Draeshund K. Magee, a federal inmate, filed a complaint pursuant to the Federal Tort Claims Act or FTCA. (Doc. 1). Mr. Magee alleges that medical staff at FCI Talladega breached their duty of care under 18 U.S.C. § 4042 and the Alabama Medical Liability Act by failing to diligently provide adequate medical treatment post-reduction of his dislocated shoulder. As a result, he contends that he has suffered a substantial injury, pain, and humiliation. (Doc. 1, pp. 2, 7-8).

On August 6, 2021, the Magistrate Judge entered a report in which he recommended that the Court deny Mr. Magee's request for appointment of medical experts, grant Mr. Magee's motion to supplement the evidence, and grant the United States' motion for summary judgment. (Doc. 19). The parties were given 14 days to file objections to the report and recommendation. (Doc. 19 at 18). Mr. Magee

has filed three sets of objections, only one of which is timely. (Docs. 24).[1] Because Mr. Magee's second and third sets of objections (Docs. 25, 27) largely duplicate his first set of objections, the analysis that follows resolves all of Mr. Magee's objections.

A district court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C). A district judge must "make a *de novo* determination of those portions of the [magistrate judge's] report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1); *see also* FED. R. CRIM. P. 59(b)(3) ("The district judge must consider *de novo* any objection to the magistrate judge's recommendation."). A district court's obligation to "'make a de novo *determination* of those portions of the report or specified proposed findings or recommendations to which objection is made,'" 447 U.S. at 673 (quoting 28 U.S.C. § 636(b)(1)), requires a district judge to "'give *fresh consideration* to those issues to which specific objection has been made by a party,'" 447 U.S. at 675 (quoting House Report No. 94-1609, p. 3 (1976)). *United States v. Raddatz*, 447 U.S. 667 (1980) (emphasis in *Raddatz*).

---

[1] Mr. Magee's objections were due August 20, 2021. His first set of objections, postmarked August 24, 2021, lack a signature date and certificate of service. (Doc. 24, p. 21). The objections may be timely under the prison mailing rule. *See Houston v. Lack*, 487 U.S. 266, 270-72 (1988) (prisoner pleadings are deemed filed at the time the prisoner delivers the pleading to prison or jail officials to be mailed).

In his objections, Mr. Magee requests appointment of a psychiatric expert to help him litigate his medical-malpractice claim. (Doc. 24, pp. 2-4, 9, 12). On the record in this case, Mr. Magee is not entitled to the appointment of a psychiatric expert because his medical malpractice claim is directed to a shoulder injury. Under Alabama law, a psychiatrist is not competent to testify about the standard of care for treating post-reduction repair of a dislocated shoulder. Therefore, the Court overrules that objection and denies Mr. Magee's request for appointment of an expert psychiatrist.[2]

Mr. Magee argues that medical staff at FCI Talladega failed to provide adequate care after a post-reduction repair of his dislocated shoulder because, when he was discharged from the hospital on January 5, 2018, he was given instructions to see an orthopedist in three weeks, but FCI's medical staff did not arrange for the follow-up visit. Mr. Magee fairly points out that, when he was discharged from his initial shoulder procedure, Dr. Ruth provided "Home Instructions," a form that an emergency room nurse discussed with him. (Doc. 12, p. 332). Those instructions state: "Return to ED or Follow up with your Primary Care Physician if feeling worse or experiencing new symptoms. Follow up with Orthopedist, keep shoulder

---

[2] The Court understands from his medical records that Mr. Magee struggles with anxiety. Mr. Magee may believe that a psychiatrist would be able to offer opinions regarding his anxiety and the extent to which his shoulder pain is linked to his anxiety. Because Mr. Magee's medical records do not support his claim that the medical care he received at FCI Talladega for his shoulder was inadequate, Mr. Magee does not require a psychiatric expert.

immobilizer in place until Ortho follow up." (Doc. 12, p. 332). Mr. Magee overlooks the fact that, when he returned to prison from the hospital, he immediately reinjured his shoulder. (Doc. 12, p. 256). He returned to the emergency room. This time, Mr. Magee saw Dr. Blanco. The instructions that Dr. Blanco provided state that Mr. Magee was to "follow up with a doctor" if he had medical symptoms or problems. (Doc. 12, p. 315). Dr. Holbrook and Dr. Lawrence at FCI Talladega treated Mr. Magee after he returned to prison from his second emergency room visit, so the medical staff complied with the instructions that Dr. Blanco provided.[3]

Mr. Magee asks the Court to appoint Dr. Ponce and Dr. Ruth as medical experts. Dr. Ponce and Dr. Ruth treated Mr. Magee. (Doc. 24, pp. 10, 12, 16-17, 19). The Magistrate Judge held that Mr. Magee could not satisfy his burden of proof without expert testimony, and his "failure to come forward with expert medical evidence sufficient to create a genuine issue of material fact with respect to the elements of an Alabama Medical Liability Act claim" defeated his FTCA claim. (Doc. 19, p. 13). The Magistrate Judge also refused Mr. Magee's request for appointment of an expert, finding that Mr. Magee's "non-expert evidence is weak."

---

[3] Mr. Magee points to a record notation from Dr. Lawrence that his dislocation was "resolved," arguing that this notation is inconsistent with the medical evidence. (Doc. 24, p. 3; *see* Doc. 12, pp. 140-141). But, Dr. Lawrence's notation in a January 2019 pertains to the fact Mr. Magee's shoulder no longer was dislocated. Dr. Lawrence specifically noted that Mr. Magee reported shoulder pain. (Doc. 12, p. 140).

4

(Doc. 19, pp. 14-15) (citing Federal Rule of Evidence 706; *Gillentine v. Correctional Medical Services*, *Inc.*, 556 Fed. Appx. 845, 846 (11th Cir. 2014)).

The Court agrees that, on the record in this case, expert opinions will not advance Mr. Magee's medical malpractice claim. The rule regarding expert testimony in medical malpractice actions under Alabama law is this:

> As a general rule, in a medical-malpractice action, the plaintiff is required to produce expert medical testimony to establish the applicable standard of care and a breach of that standard of care, in order to satisfy the plaintiff's burden of proof. See *Allred v. Shirley,* 598 So. 2d 1347, 1350 (Ala. 1992) (citing *Tuscaloosa Orthopedic Appliance Co. v. Wyatt,* 460 So. 2d 156, 161 (Ala. 1984)).
>
> However, "[a]n exception to this rule exists 'in a case where want of skill or lack of care is so apparent ... as to be understood by a layman, and requires only common knowledge and experience to understand it .'" *Wyatt,* 460 So. 2d at 161 (quoting *Dimoff v. Maitre,* 432 So. 2d 1225, 1226–27 (Ala. 1983)). This Court has recognized the following situations as falling within this exception:
>
>> "'1) where a foreign instrumentality is found in the plaintiff's body following surgery; 2) where the injury complained of is in no way connected to the condition for which the plaintiff sought treatment; 3) where the plaintiff employs a recognized standard or authoritative medical text or treatise to prove what is or is not proper practice; and 4) where the plaintiff is himself or herself a medical expert qualified to evaluate the doctor's allegedly negligent conduct.'"
>
> *Allred,* 598 So. 2d at 1350 (quoting *Holt v. Godsil,* 447 So. 2d 191, 192–93 (Ala. 1984)(citations omitted in *Allred*)).

*Anderson v. Alabama Reference Laboratories*, 778 So. 2d 806, 811 (Ala. 2000). Conversely, where, as here, a plaintiff's medical records contain plain language, are easily understood by a layman, and require only common knowledge and experience to understand them, a judge may review the records without the assistance of an expert to evaluate a motion for summary judgment.

Mr. Magee's medical records show that in the two years following his shoulder procedures, he requested medical attention fairly frequently, mostly for concerns unrelated to his shoulder. When he complained of shoulder pain, he typically received treatment, including a referral to an orthopedist. He sometimes refused treatment that was offered to him or missed an appointment. (Doc. 12, pp. 120-25). Dr. Holcomb's efforts to order the MRI that an orthopedist recommended were complicated by COVID. Mr. Magee's most persistent complaints of shoulder pain occurred in the month before he was transferred from FCI Talladega to another BOP facility. (*See generally* Docs. 12, 15). On this record, expert testimony will not advance Mr. Magee's effort to establish a breach of the standard of care.

Mr. Magee asks the Court to consider recent medical records from the facility where he currently is housed. (Doc. 29). He reports that since arriving at his new facility in early 2021, he has received "x-rays and physical examination, which is the same treatment Defendant(s) (F.C.I.- Talladega) denied Magee from Jan. 5, 2018 thru Jan. 31, 2021." (Doc. 27, p. 2). Mr. Magee's medical records contradict his

6

assertion that the medical staff at FCI Talladega refused him physical exams or x-rays of his shoulder.  Mr. Magee also reports that, at his new facility, he was referred for an MRI despite the Delta variant of COVID, and he received an MRI on August 31, 2021.  (Doc. 27, p. 2).  Given the complications of the COVID-19 pandemic, on the record in this case, the Court will not second-guess scheduling decisions that FCI Talladega medical staff had to make when seeking outside treatment for Mr. Magee.[4]

Because the plain information in Mr. Magee's medical records contradict his contention that the medical treatment he received at FCI Talladega following the January 2018 procedures to repair his dislocated shoulder were inadequate and constituted a breach of the standard of care, the Court will not appoint an expert pursuant to Rule 706 of the Federal Rules of Evidence.  Mr. Magee's records are consistent with Dr. Holbrooke's general description of Mr. Magee's medical treatment in the two years following his shoulder procedures.  (Doc. 12, pp. 29-35). Some of the supplemental medical records that Mr. Magee submitted are duplicates of medical records that the United States supplied, and none of the supplemental records suggests that medical staff at FCI Talladega refused him adequate medical care when he complained of shoulder pain.  Mr. Magee made two trips to the

---

[4] The challenges that COVID has created run the gamut.  In 2019 and 2020, many prisons were on lockdown.  When a vaccination for COVID became available early in 2021, prisons gained more flexibility, though that flexibility was curtailed when the Delta variant of the COVID virus began spreading.  Mr. Magee's medical records indicate that FCI Talladega was on lockdown during several periods in which he sought medical treatment.

emergency room in 2018, and he saw an orthopedist early in 2020 based on a referral he received late in November of 2019 when he complained of shoulder pain.  Delays in treatment in 2020 were the product of COVID restrictions.  Because Mr. Magee's medical records demonstrate that the medical staff at FCI Talladega did not breach the standard of care, Mr. Magee's FTCA claim against the United States fail as a matter of law.

Having reviewed the materials in the Court's electronic docket, including the report and recommendation, Mr. Magee's objections, and Mr. Magee's medical records, the Court overrules Mr. Magee's objections and accepts the Magistrate Judge's recommendation.  Accordingly, the Court denies Mr. Magee's requests for appointment of psychiatric and medical experts.  The Court grants Mr. Magee's request to supplement his FCI Talladega medical records.  (Doc. 15).  By separate order, the Court will grant the defendant's motion for summary judgment.

**DONE** and **ORDERED** this September 29, 2021.

_____
**MADELINE HUGHES HAIKALA**
UNITED STATES DISTRICT JUDGE